JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Marchell Davis and Brandy Gress, et al

**(b)** County of Residence of First Listed Plaintiff  Bucks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jonathan Shub , Kohn, Swift & Graf, P.C. 1600 Market Street, Suite 2500, Philadelphia PA, 19103 (215) 238-1700

## DEFENDANTS
Progressive Advanced Insurance Company, et al

County of Residence of First Listed Defendant  Ohio
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  **PERSONAL INJURY** ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander  Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability  ☐ 368 Asbestos Personal ☐ 340 Marine  Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product  Liability  Liability  **PERSONAL PROPERTY** | | ☐ 840 Trademark  **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 360 Other Personal  Property Damage Injury  ☐ 385 Property Damage | Relations ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | Exchange ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury -  Product Liability Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/  Sentence | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | State Statutes |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)- Diversity
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
5,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DEC - 4 2019

DATE
12/04/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _221 E Bristol Road, Feasterville TR, PA 19053_

Address of Defendant: _6300 Wilson Mills Road, Mayfield Village, Ohio, 44143_

Place of Accident, Incident or Transaction: _Feasterville PA, Bucks County_

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _12/04/2019_  _____  _53965_
                    *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** **Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** **Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☑ 9. All other Diversity Cases
  *(Please specify):* _Class Action Under 28 U.S.C 1332 (d)_

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Jonathan Shub_, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _12/04/2019_  _____  _53965_
                    *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

DEC - 4 2019

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Marchell Davis and Brandy Gress, et al | : | CIVIL ACTION |
| v. | : | |
| Progressive Advanced Insurance Company, et al. | : | NO. **19    5726** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)          (X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )



| | | |
|---|---|---|
| December 4, 2019 | Jonathan Shub | Plaintiffs and Proposed Class |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 238-1700 | (215) 238-1968 | jshub@kohnswift.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC - 4 2019

$400

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARCHELL DAVIS and BRANDY GRESS**, on behalf of themselves and all others similarly situated,<br><br>       **Plaintiffs**,<br><br>v.<br><br>**PROGRESSIVE ADVANCED INSURANCE COMPANY and PROGRESSIVE SPECIALTY INSURANCE COMPANY**,<br><br>       **Defendants**. | **CASE NO.:**_____<br><br>   **19  5726**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs, Marchell Davis ("Davis") and Brandy Gress ("Gress") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Progressive Advanced Insurance Company and Progressive Specialty Insurance (collectively "Progressive" or "Defendants"), and in support thereof states:

## NATURE OF THE ACTION

1.  This is a class action lawsuit brought by Plaintiffs, the named insured under their respective Progressive automobile policies issued for private passenger auto physical damage, including comprehensive and collision coverage (the "Policy"). Defendants' Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax and State-mandated regulatory fees. However, in violation of its Policy, Progressive refuses to pay mandatory

1

regulatory fees and/or sales tax when it purports to pay ACV to insureds who have suffered a total loss of their insured vehicle.

2.      Defendants are one of the largest passenger auto insurance carriers operating in the State of Pennsylvania. One of the coverages Progressive sells to consumers is comprehensive and collision coverage. Progressive systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3.      Pursuant to its standard Policy form language, Progressive is obligated to pay insureds sales tax in making payment to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle *at the time of loss* ("ACV sales tax").

4.      Pursuant to its standard Policy form language, Progressive is also obligated to pay the full title registration and regulatory fees imposed by the State of Pennsylvania on the purchase and registration of automobiles in the state ("ACV regulatory fees"). Nevertheless, Progressive, in violation of its contract, pays no such fees to insureds, thus breaching its contract with every insured who suffered a total loss to their insured vehicle.

5.      This lawsuit is brought by Plaintiffs on behalf of themselves and on behalf of all other similarly situated insureds who have suffered damages due to Progressive's practice of

2

refusing to pay full ACV sales tax and regulatory fees to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

6.      The failure to pay ACV sales tax and regulatory fees on first-party total losses owed to Progressive insureds pursuant to Progressive's uniform policy language constitutes a breach of the policy.

## **THE PARTIES**

7.      Plaintiff Davis is domiciled and resides in Bucks County, Pennsylvania, and is a citizen of the State of Pennsylvania.

8.      Plaintiff Gress is domiciled and resides in Franklin County, Pennsylvania, and is a citizen of the State of Pennsylvania.

9.      At all times material hereto, Progressive is and was a foreign corporation located in the State of Ohio, incorporated in Ohio and with its principal place of business in Ohio, and authorized to transact insurance in the State of Pennsylvania.

## **JURISDICTION AND VENUE**

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiffs are members of the putative class, which consists of at least 100 members, and Plaintiffs and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

11.      Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendants are subject to personal jurisdiction in this district.

## AMOUNT IN CONTROVERSY

12.     Although the precise number of class members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are among the largest motor vehicle insurers in the State of Pennsylvania and write hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members.

## FACTUAL ALLEGATIONS

### A.     The Progressive Policy

13.     Defendants' policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and present in Progressive auto policies issued by Defendants in Pennsylvania. Indeed, Plaintiffs and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiffs were insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as "Exhibit A".[1]

14.     In Section IV of the Policy, entitled "DAMAGE TO A VEHICLE" Progressive states, in relevant part, that it will pay for "sudden, direct and accidental loss to a . . . covered auto." Ex. A at 20 of 36.

---

[1]. Exhibit A is Progressive's Policy Form 9611D PA  which is  materially identical to the other Progressive Policy at issue in this action, Form 9611A PA, The Policies for each of the Plaintiffs are materially identical as it pertains to the Physical Damages Coverages relevant herein and as it pertains to all relevant definitions.

15.     "Covered auto" is defined as "any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer."[2] *Id.* at 5 of 36.

16.     The limit of liability is established as, *inter alia*, "the actual cash value of the stolen or damaged property at the time of loss reduced by the applicable deductible." *Id.* at 25 of 36.

17.     Actual cash value is not defined in the Policy. Pursuant to applicable state law, ACV includes an obligation to pay sales tax and mandatory registration fees for total loss vehicle collision or physical damage other than collision coverage.

18.     There is no difference, for purposes of Defendants' duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id.*

19.     The Policy language applies to all covered autos irrespective of ownership interests — whether owned, financed, or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the Policy.

20.     Clearly, then, the Policy does not further define ACV as including, for example: (1) any provision excluding sales tax or mandatory regulatory fees from ACV; (2) any provision deferring payment of the ACV sales tax or regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle. Instead, the Policy establishes ACV as a *predictable amount* upon which both Progressive and the insured can rely.

21.     The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was

---

[2] Unless otherwise indicated. the emphasis within the quotations of Plaintiffs' Complaint are in the Policy.

worth, or paid more than the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

**B.    Sales Tax and Regulatory Fees Are Replacement Costs**

22.    Sales tax is a mandatory cost imposed by the State of Pennsylvania on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle — or to purchase any vehicle under any circumstances — without payment for sales tax.

23.    As set forth above, Progressive promises to pay the ACV of an insured vehicle in the event of, *inter alia*, a total loss; and ACV means replacement cost of the insured vehicle, less depreciation. Sales tax is incontrovertibly an element of the replacement cost of the vehicle, and is therefore incontrovertibly an element of the ACV of the insured vehicle.

24.    Furthermore, the State of Pennsylvania imposes mandatory regulatory fees on the purchase and registration of all vehicles. Vehicles are required to be legally titled, registered, and inspected in order to be used and operated in the State of Pennsylvania. Pennsylvania imposes fees on such transactions, including a title fee of $55.00, a title lien fee of $26.00 (if a lien is recorded with the transfer of title), a passenger vehicle registration transfer fee of $9.00, county fees up to $5.00, PA State Safety Certificate of Inspection Program Certificate Fee ("Safety Inspection Sticker") of $8.00, and a PA Emission Inspection Program Management Fee ("Emissions Inspection Sticker") of $1.57. These fee amounts and categories — title fee, title lien fee, registration fee, county fee, Safety Inspection Sticker fee, Emissions Inspection Sticker fee — are "ACV regulatory fees." As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total loss vehicle.

25.     Thus, sales tax and the aforementioned regulatory fees are inherently part of the costs to replace an insured property, including a vehicle.

**C.     Progressive Systematically Fails to Pay Full Regulatory Fees and/or Sales Tax for Total Loss Vehicles**

26.     Progressive's uniform procedure is to use a third-party vendor, Mitchell International Inc., ("Mitchell"), to determine the base and adjusted value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss.

27.     The adjusted vehicle value is otherwise known as the "Settlement" value of the vehicle. Plaintiffs do not challenge the determination of the adjusted vehicle value. Plaintiffs challenge Progressive's application of its policy. In other words, Plaintiffs challenge Progressive's failure to pay mandatory fees, and not the adjusted vehicle value determined by the appraiser.

28.     In addition to the Settlement value (which takes into account depreciation and condition), other mandatory replacement costs — title fees, registrations, and sales tax — are a component of the ACV, and, therefore, should be included in Defendants' calculation of the ACV.

29.     Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus sales tax* calculated as a percentage of the adjusted vehicle value, *plus mandatory regulatory fees* (title and registration fees). Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, plus mandatory regulatory fees (title and registration fees), less any applicable deductible and salvage retention value.

30.     Indeed, in Pennsylvania, Progressive pays sales tax — the applicable percentage of the adjusted vehicle value — as part of the ACV replacement costs if the total loss vehicle was not retained by the insured.

7

31.     Such payments constitute an acknowledgment from Progressive that in the event of a total loss, its Policy promises payment of sales tax as part of the ACV of the insured vehicle.

32.     Nevertheless, in Pennsylvania, Progressive does *not* uniformly pay the sales tax owed as part of the ACV if the total loss vehicle was retained.

33.     Progressive's Policy does not contain any provision or clause stating Progressive will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, Progressive simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, Progressive further indicates that replacement costs *not* excluded would be paid. If Progressive had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

34.     Progressive's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to pay precisely the same amount — replacement costs of the insured vehicle minus depreciation — to every policyholder.

35.     Progressive's Policy promises payment of full sales tax and regulatory fees as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax or regulatory fees at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. Progressive's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

8

### D.     Plaintiffs' Total Loss Claims

**Plaintiff Davis**

36.     At all times material hereto, Plaintiff Davis owned and insured a 2014 Acura MDX, VIN # 5FRYD4H85EB038999.

37.     Davis insured the 2014 Acura MDX (hereinafter, the "Davis Insured Vehicle") under an insurance policy issued by Progressive Specialty Insurance Company. Ex. A; Exhibit B (Davis Declarations Sheet). Progressive insured Davis' vehicle according to this Policy at all times material hereto.

38.     On or about July 8, 2018, Davis was involved in an accident while operating Davis' Insured Vehicle. As a result of said accident, Davis filed a claim for property damage with Progressive, claim number 18-3539940-01. Exhibit C (Davis Market Valuation Report) (the "Davis Report").

39.     Following the filing of said claim, Progressive, through its third-party vendor, Mitchell determined that the vehicle was a total loss with a base value of $23,327.08, using a condition adjustment of $148.76, sales tax of $1,390.70, and an applicable deductible of $1,000.00, Mitchell determined the Settlement Value of the Davis Insured Vehicle was $23,569.02. *Id.*

40.     The base value and adjusted vehicle value are calculated by Mitchell based on the "sticker price" of comparable vehicles listed for sale in the local market.

41.     Progressive followed Mitchell's recommendations and provided a settlement payment of $23,569.02. Exhibit D (Davis Total Loss Settlement Summary).

42.     Progressive did not include any state or local regulatory fees in making its ACV payment to Davis, thereby breaching the terms of Davis' Policy.

43.     Davis paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim — albeit insufficiently — Progressive acknowledged that Davis satisfied all conditions precedent required under the Policy.

**Plaintiff Gress**

44.     At all times material hereto, Plaintiff Gress owned and insured a 2007 Honda Civic SI, VIN # 2HGFG21577H704053.

45.     Gress insured the 2007 Honda Civic SI (hereinafter, the "Gress Insured Vehicle") under an insurance policy issued by Progressive Advanced Insurance Company. Ex. A; Exhibit E (Gress Declarations Sheet). Progressive insured Gress' vehicle according to this Policy at all times material hereto.

46.     On or about May 17, 2018, Gress was involved in an accident while operating Gress' Insured Vehicle. As a result of said accident, Gress filed a claim for property damage with Progressive, claim number 18-1227871-01. Exhibit F (Gress Market Valuation Report) (the "Gress Report").

47.     Following the filing of said claim, Progressive, through its third-party vendor, Mitchell determined that the vehicle was a total loss with a base value of $5,765.54. Mitchell then added $20.00 in aftermarket parts to determine the Market Value of the Gress Insured Vehicle was $5,785.54. Next, Mitchell applied the applicable deductible of $250.00 and determined the Settlement Value of the Gress Insured Vehicle was $5,535.54. *Id.*

48.     The base value and adjusted vehicle value are calculated by Mitchell based on the "sticker price" of comparable vehicles listed for sale in the local market.

49.     Progressive followed Mitchell's Market Value recommendation and used the same amount to determine that the Actual Cash Value of the Gress Insured Vehicle was $5,785.54. Progressive then subtracted $1,400.00 (itemized as "Owner Retains") to reach a net settlement amount of $4,385.54. Progressive then applied the $250.00 deductible and provided a settlement payment of $4,135.54. Exhibit G (Gress Total Loss Settlement Summary).

50.     Progressive did not include any sales tax nor any state or local regulatory fees in making its ACV payment to Gress, thereby breaching the terms of Gress' Policy

51.     Gress paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim — albeit insufficiently — Progressive acknowledged that Gress satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

53.     Plaintiffs bring this action as class representative, on behalf of themselves and on behalf of all other persons or entities similarly situated, more specifically defined as follows, and hereinafter referred to as the "Class".

> All individuals insured under a Pennsylvania policy issued by Progressive Advanced Insurance Company or Progressive Specialty Insurance Company covering an owned or financed vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment did not include sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV sales tax") and/or where the total loss payment included no amount (or a prorated amount) for state and local regulatory fees imposed by the State of Pennsylvania ("ACV regulatory fees") within four years prior to the date on which this lawsuit was filed through the date of any certification order.

54.     Certification of the above class is supported by the following considerations:

  i.   The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

  ii.  Counsel in this class action are not aware of any previously filed litigation against Progressive Advanced Insurance Company or Progressive Specialty Insurance Company in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and

  iii. No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

55.     Although the precise number of members of the Class are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs understand Defendants to be one of the largest motor vehicle insurers in the State of Pennsylvania — one that writes hundreds of millions of dollars of physical damage coverage premiums.  Thus, the class of persons affected by Defendants' unlawful practice alleged herein consists of thousands of individuals, or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendants in violation of standardized and uniform insurance policy language, which results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the Class members.

56.     The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and public information concerning the statistical likelihood of total losses per premiums written, Plaintiffs believe the Class is comprised of approximately 100,000 members. Numerosity under Rule 23(a)(1) is established.

57.     Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendants and all members of both Class, including Plaintiffs, are bound by materially identical policy terms.

58.     As to the Class, common questions include (but are not limited to): (1) whether Defendants' Policy promised to pay insureds sales tax and regulatory fees upon the total loss of an insured vehicle;  (2) whether Defendants are permitted to pay only a partial or prorated amount of sales tax or regulatory fees; (3) whether Progressive makes the same promise as to insureds who retain their total loss vehicles and those who do not retain their total loss vehicle; and (4) whether the ACV of a vehicle depends on whether it is retained as salvage or not.

59.     Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs and members of the Class were injured by Defendants' uniform misconduct.  Further, Plaintiffs and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the members of the Class. Plaintiffs suffered the same harm as all other members of the Class: the coverage for sales tax and regulatory fees that Defendants underpaid its insureds. Plaintiffs are not subject to any unique defenses nor do Plaintiffs bring any unique claims.

60.     The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

61.     Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class members.

62.     As to the Class, the critical common question — does Defendants' promise to pay the ACV of the total loss vehicle obligated it to include ACV regulatory fees and sales tax — is identical for every member of the Class.

63.     Further, the measure of damages, if any, is the same for every member of both Class, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different) or variances in the prorated amount paid in ACV regulatory fees, the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

64.     Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiffs assert here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

65.     As to the Class, class treatment is superior because every claim will be substantially determined by answering the single question of whether Defendants' Policy obligates payment of ACV Regulatory Fees and Sales Tax. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total

loss class actions against other insurers (including Defendants in a different state) were successfully treated as class actions.

66.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiffs possess no conflict with members of the Class. Plaintiffs' claim does not conflict with that of any member of the Class, and Plaintiffs have no financial or any other interest conflicting with those of the Class. Plaintiffs fully intend to vigorously protect the interests of Class members in prosecuting these claims.

67.     Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiffs' counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax and/or ACV Regulatory Fees after total losses.

## CLAIM FOR RELIEF
## BREACH OF CONTRACT

68.     Plaintiffs incorporate by reference paragraphs 1-67 as though fully set forth herein.

69.     Plaintiffs were party to an insurance contract with Defendants as described herein. All Class members were parties to insurance contracts with Defendants containing materially identical terms.

70.     The interpretation of Plaintiffs' and all Class members' Policies are governed by Pennsylvania law.

71.     Plaintiffs and all Class members made a claim determined by Defendants to be a first-party total loss under the insurance policy and determined by Defendants to be a covered claim.

72.     Defendants, by paying the total loss claim, determined that Plaintiffs and each Class

15

member complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policies for the insured to be paid on his or her total loss.

73.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiffs and class members were owed the ACV of the vehicle, which, per the terms of the Policies, includes sales tax calculated as a percentage of the adjusted vehicle value and ACV Regulatory Fees in the amounts set by Pennsylvania law.

74.     Defendants refused or otherwise failed to pay ACV Sales Tax and ACV Regulatory Fees as part of its purported ACV payment to Plaintiffs and every Class member, following Defendants' determination that a vehicle was a total loss.

75.     Defendants' failure to provide full payment for the ACV Sales Tax and Regulatory Fees constitutes a material breach of contract with Plaintiffs and every Class member.

76.     As a result of said breaches, Plaintiffs and the Class members are entitled, under Defendants' Policies, to sums representing the benefits owed for ACV Sales Tax and Regulatory Fees, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Davis, and Gress, on behalf of themselves and on behalf of the Class, demand a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

1.     For an Order certifying this action as a Class Action on behalf of the Class described above;

2.     For an award of compensatory damages for the Plaintiffs and members of the Class in amounts owed under the Policies;

3. For all other damages according to proof;

4. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

5. For costs of suit incurred herein;

6. For pre- and post- judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury as to all issues so triable.


DATED: December 4, 2019                          Respectfully submitted,

                                                 **KOHN, SWIFT & GRAF, P.C.**

                                         By:     _____

                                                 Jonathan Shub (Bar No. 53965)
                                                 Kevin Laukaitis (Bar No. 321670)
                                                 1600 Market Street, Suite 2500
                                                 Philadelphia, PA  19103-7225
                                                 T:  215-238-1700
                                                 jshub@kohnswift.com
                                                 klaukaitis@kohnswift.com

                                                 **EDELSBERG LAW, PA**
                                                 Scott Edelsberg, Esq.*
                                                 David M. Sholl, Esq.*
                                                 20900 NE 30th Ave., Suite 417
                                                 Aventura, FL 33180
                                                 Telephone:  (305) 975-3320
                                                 scott@edelsberglaw.com
                                                 david@edelsberglaw.com

                                                 **DAPEER LAW, P.A.**
                                                 Rachel Dapeer, Esq.*
                                                 300 S. Biscayne Blvd, #2704
                                                 Miami, FL 33131

17

Telephone: 305-610-5223
rachel@dapeer.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis*
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915
efilings@shamisgentile.com

**NORMAND PLLC**
Edmund A. Normand*
Jacob L. Phillips*
3165 McCrory Place, Suite 175
Orlando, FL 32803
T: 407-603-6031
Ed@NormandPLLC.com
jacob.phillips@normandpllc.com

**\*Pro Hac Vice Application Forthcoming**

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT A



# PENNSYLVANIA

## AUTO POLICY

THIS POLICY, THE **DECLARATIONS PAGE, YOUR** INSURANCE APPLICATION, AND ANY APPLICABLE ENDORSEMENTS CONTAIN THE TERMS OF THE CONTRACT OF INSURANCE BETWEEN **US** AND THE POLICYHOLDER.

### NOTICE: IF YOU BUY COLLISION COVERAGE, IT DOES NOT APPLY TO AUTOS RENTED FOR SIX MONTHS OR MORE.

Form 9611D PA (02/16)
version 2.0



# <u>CONTENTS</u>

**INSURING AGREEMENT** ................................................................ 1

**GENERAL DEFINITIONS** ........................................................... 1

**PART I—LIABILITY TO OTHERS**
Insuring Agreement.............................................................3
Additional Definition .........................................................3
Additional Payments...........................................................3
Exclusions ........................................................................4
Limits of Liability................................................................5
Financial Responsibility Laws ...........................................6
Other Insurance ................................................................6
Out-of-State Coverage ......................................................6

**PART II—FIRST PARTY BENEFITS COVERAGE**
Insuring Agreement—First Party Benefits Coverage...................7
Insuring Agreement—Combination First Party Benefits Coverage..............7
Insuring Agreement—Extraordinary Medical Benefits Coverage ................7
Additional Definitions.........................................................8
Exclusions ........................................................................9
Limits of Liability............................................................. 10
Other Insurance .............................................................. 10
Priority of Policies........................................................... 11

**PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE**
Insuring Agreement—Uninsured Motorist Coverage .................. 11
Insuring Agreement—Underinsured Motorist Coverage............................ 12
Additional Definitions....................................................... 12
Exclusions ...................................................................... 14
Limits of Liability............................................................. 14
Other Insurance .............................................................. 16

**PART IV—DAMAGE TO A VEHICLE**
Insuring Agreement—Collision Coverage ............................. 16
Insuring Agreement—Comprehensive Coverage ...................... 17
Insuring Agreement—Additional Custom Parts or
    Equipment Coverage ................................................... 17
Insuring Agreement—Rental Reimbursement Coverage........................... 18
Insuring Agreement—Loan/Lease Payoff Coverage ................. 18
Insuring Agreement—Pet Injury Coverage............................. 19
Additional Definitions....................................................... 19
Exclusions ...................................................................... 20
Limits of Liability............................................................. 21
Payment of Loss.............................................................. 22
No Benefit to Bailee ........................................................ 23
Loss Payable Clause........................................................ 23

i

Other Sources of Recovery ..................................................................23
Appraisal ..............................................................................................23

## PART V—ROADSIDE ASSISTANCE COVERAGE

Insuring Agreement ..............................................................................24
Additional Definitions...........................................................................24
Exclusions ............................................................................................24
Unauthorized Service Provider.............................................................25
Other Insurance ...................................................................................25

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS...........................25

## PART VII—GENERAL PROVISIONS

Policy Period and Territory....................................................................26
Changes................................................................................................26
Duty to Report Changes .......................................................................27
Settlement of Claims ............................................................................27
Terms of Policy Conformed to Statutes ...............................................27
Transfer of Interest ..............................................................................27
Fraud or Misrepresentation .................................................................28
Payment of Premium and Fees ............................................................28
Cancellation .........................................................................................29
Cancellation Refund.............................................................................29
Nonrenewal ..........................................................................................30
Automatic Termination.........................................................................30
Legal Action Against Us........................................................................30
Our Rights to Recover Payment ...........................................................30
Joint and Individual Interests...............................................................31
Bankruptcy ...........................................................................................31

## PENNSYLVANIA AUTO POLICY

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. **"Additional auto"** means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. **we** insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.
   An **additional auto** will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. **"Auto"** means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
   However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. **"Auto business"** means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

4. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. **"Covered auto"** means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**; or
   d. a **trailer** owned by **you**.

6. **"Declarations page"** means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. "**Occupying**" means in, on, entering or exiting.

8. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

9. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

10. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:

    a. listed in the "Drivers and household residents" section on the **declarations page**; and

    b. not designated as either an "Excluded" or a "List Only" driver.

11. "**Relative**" means:

    a. a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child;

    b. a minor child in the custody of:

       (i)   **you**; or

       (ii)  a person residing in **your** household who is related to **you**; or

    c. **your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

12. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A **replacement auto** will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

13. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

14. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:

    a. for commercial purposes;

    b. as an office, store, or for display purposes; or

    c. as a passenger conveyance.

15. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software,

website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

16. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

17. "**You**" and "**your**" mean:

    a.   a person shown as a named insured on the **declarations page**; and

    b.   the spouse of a named insured if residing in the same household at the time of the loss.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

### ADDITIONAL DEFINITION

When used in this Part I:

"**Insured person**" means:

a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;

b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;

c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and

d. any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;

2. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;

3. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

4. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;

2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**;

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;

11. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

12. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available

4

for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

13. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

14. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

15. punitive or exemplary damages; or

16 **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any

one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I will be reduced by any payment to that person under Part III—Uninsured/Underinsured Motorist Coverage.

**We** will not pay under this Part I any expenses paid or payable under Part II—Medical Payments Coverage.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a. the required minimum amounts and types of coverage; or
    b. the limits of liability under this policy.

## PART II—FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT—FIRST PARTY BENEFITS COVERAGE

If **you** pay the premium for this coverage, **we** will pay the following First Party Benefits, subject to the limit of liability shown on **your declarations page**, for loss or expense sustained by an **insured person** because of **bodily injury** caused by an accident and arising out of the maintenance or use of a **motor vehicle**:

1. **medical expenses**;
2. **income loss**;
3. **funeral benefit**; and
4. **accidental death benefit**.

### INSURING AGREEMENT—COMBINATION FIRST PARTY BENEFITS COVERAGE

If **you** pay the premium for this coverage, **we** will pay **medical expenses**, **income loss**, **funeral benefit**, and **accidental death benefit**, subject to the combined single limit of liability shown on **your declarations page**, for each **insured person** who sustains **bodily injury** caused by an accident and arising out of the maintenance or use of a **motor vehicle**. Subject to the combined single limit of liability, the most **we** will pay as the **funeral benefit** for an **insured person** is $2,500, and the most **we** will pay as the **accidental death benefit** for an **insured person** is $25,000. **We** will only pay for expenses or loss incurred within three years from the date of the accident.

### INSURING AGREEMENT—EXTRAORDINARY MEDICAL BENEFITS COVERAGE

If **you** pay the premium for this coverage, subject to the limit of liability shown on **your declarations page**, **we** will pay **medical expenses** incurred by an **insured person** in excess of the aggregate of $100,000 that result from **bodily injury** caused by an accident and arising out of the maintenance or use of a **motor vehicle**, subject to the following:

1. The limit of liability shown on the **declarations page** for Extraordinary Medical Benefits Coverage is the most **we** will pay for **medical expenses** incurred by an **insured person** as the result of an accident to which this Extraordinary Medical Benefits Coverage applies, and is subject to the following additional limits:

   a. an annual limit of $50,000 for **medical expenses** incurred by an **insured person**; and

   b. a lifetime aggregate limit of $1,000,000 for **medical expenses** incurred by an **insured person**.

   However, the $50,000 annual limit shall not apply to **medical expenses** covered by Extraordinary Medical Benefits Coverage that are incurred during the first 18 months of eligibility.

2. Any amounts payable by **us** as Extraordinary Medical Benefits will be excess to any amounts available to an **insured person** for **medical expense** under any First Party Benefits Coverage provided in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

3.  If an **insured person** is eligible for Extraordinary Medical Benefits Coverage and is also eligible for benefits under the Pennsylvania Catastrophic Loss Trust Fund, the combined total recovery under Extraordinary Medical Benefits Coverage and the Pennsylvania Catastrophic Loss Trust Fund for **medical expenses** incurred by an **insured person** as the result of an accident shall not exceed $1,000,000.

## ADDITIONAL DEFINITIONS

When used in this Part II:

1.  "**Accidental death benefit**" means a death benefit paid to the personal representative of the **insured person**, should injury caused by a **motor vehicle** accident result in death within 24 months from the date of the accident.
2.  "**Funeral benefit**" means the reasonable and necessary expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased **insured person**, incurred due to the death of the **insured person** if death:
    a.  results from a **motor vehicle** accident; and
    b.  occurs within 24 months from the date of the accident.
3.  "**Income loss**" means 80% of actual loss of gross income of an **insured person**. It also includes reasonable expenses actually incurred for:
    a.  hiring a substitute to perform services the **insured person** would have performed in connection with self-employment, in order to mitigate or reduce loss of gross income; or
    b.  hiring special help to enable the **insured person** to work and mitigate loss of gross income.

    **We** will not pay for "**income loss**" for:
    a.  loss of income during any period following the death of an **insured person**;
    b.  expenses incurred for services performed following the death of an **insured person**; or
    c.  any loss of income during the first five days the **insured person** did not work after the accident due to the **bodily injury** caused by the accident.
4.  "**Insured person**" means:
    a.  with respect to **medical expenses**, **income loss**, and **funeral benefit**:
        (i)   **you**, a **relative**, or a **rated resident**; and
        (ii)  any other person:
            (a)  while **occupying your covered auto** with the express or implied permission of **you**, a **relative** or a **rated resident**; or
            (b)  while not **occupying** a **motor vehicle** if injured as a result of an accident which occurs in Pennsylvania involving **your covered auto**. This does not apply if **your covered auto** is parked and unoccupied at the time of the accident unless it was parked in a manner as to create an unreasonable risk of injury; and
    b.  with respect to an **accidental death benefit**, **you**, a **relative**, or any **rated resident**.
5.  "**Medical expense**" means the reasonable charge for necessary medical treatment and rehabilitative services, including, but not limited to:
    a.  hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, and nursing services;

   b.   licensed physical therapy, vocational rehabilitation, occupational therapy, speech pathology and audiology therapy, and optometric services; and

   c.   medications, medical supplies, and prosthetic devices;

all without limitation as to time, provided that, within 18 months from the date of the accident causing **bodily injury**, it is ascertainable, with reasonable medical probability, that further **medical expense** may be incurred as a result of the **bodily injury**. "**Medical expense**" may include any non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

6.   "**Motor vehicle**" means a self-propelled vehicle, operated or designed for use upon public roads. However, **motor vehicle** does not include a vehicle operated:

   a.   by muscular power; or

   b.   on rails or tracks.

7.   "**Your covered auto**" means a **motor vehicle** for which **you** have purchased:

   a.   Part I—Liability To Others Coverage if the **motor vehicle** is:

      (i)   owned by **you**; or

      (ii)   shown on the **declarations page**; and

   b.   First Party Benefits Coverage as required under the Pennsylvania Motor Vehicle Financial Responsibility Law.

8.   "**Bodily injury**" in Part II means accidental bodily harm to a person and that person's resulting illness, disease or death.


**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

**We** do not provide any First Party Benefits under this Part II for **bodily injury**:

1.   sustained by any person while intentionally causing or attempting to cause **bodily injury** to:

   a.   himself or herself; or

   b.   any other person;

2.   sustained by any person while committing a felony;

3.   sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official;

4.   sustained by any person while maintaining or using a **motor vehicle** knowingly converted by that person. However, this exclusion does not apply to **you**;

5.   sustained by any person who, at the time of the accident:

   a.   is the owner of one or more registered **motor vehicles** that do not have in effect the security required by the Pennsylvania Motor Vehicle Financial Responsibility Law; or

   b.   is **occupying** a **motor vehicle** owned by that person for which the financial responsibility required by the Pennsylvania Motor Vehicle Financial Responsibility Law is not in effect;

This exclusion does not apply to **you**, a **relative**, or a **rated resident**:

   a.   while **occupying** a covered auto;

   b.   while **occupying** a **motor vehicle** that is not owned by **you**, a **relative**, or a **rated resident**; or

   c.   when struck by a motor vehicle as a pedestrian.

6.  sustained by any person maintaining or using a **motor vehicle** while located for use as a residence or premises;
7.  sustained by any person while **occupying**:
    a.  a recreational vehicle designed for use off public roads; or
    b.  a motorcycle, moped, or similar type vehicle;
8.  caused by or as a consequence of:
    a.  any discharge of a nuclear weapon;
    b.  war (whether declared or undeclared);
    c.  civil war;
    d.  insurrection; or
    e.  rebellion or revolution;
9.  from or as a consequence of the following whether controlled or uncontrolled or however caused:
    a.  nuclear reaction;
    b.  radiation; or
    c.  radioactive contamination;
10.  arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program.** This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**; or
11.  sustained by any person while using or **occupying** a **covered auto** while being used for **ride-sharing activity.** This exclusion does not apply to shared-expense car pools.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for each First Party Benefit under this Part II is the most **we** shall pay for that benefit to or for each **insured person** as the result of any one accident, regardless of the number of:

1.  claims made;
2.  **covered autos**;
3.  lawsuits brought;
4.  vehicles involved in the accident;
5.  premiums paid; or
6.  insurers providing first party benefits.

## OTHER INSURANCE

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance, including self-insurance.

Any amount payable under this Part II shall be excess over any amounts paid, payable or required to be provided to an **insured person** under any workers' compensation law or similar law. Consistent with the duty of an **insured person** to cooperate with **us** in any matter concerning a claim, an **insured person** presenting a claim under this Part II shall, when eligible for workers' compensation benefits, make application for same with both the **insured person's** employer and workers' compensation insurer.

**PRIORITY OF POLICIES**

If there is other First Party Benefits Coverage, **we** will pay benefits under this Part II in accordance with the order of priorities set forth by the Pennsylvania Motor Vehicle Financial Responsibility Law, as amended. **We** will not pay benefits if there is another insurer at a higher level of priority. The order of priority is:

First    The insurer providing benefits to the **insured person** as a named insured.

Second  The insurer providing benefits to the **insured person** as a **relative** or as a **rated resident** who is not a named insured under another policy providing coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law.

Third    The insurer of the **motor vehicle** which the **insured person** is **occupying** at the time of the accident.

Fourth  The insurer providing benefits on any **motor vehicle** involved in the accident if the **insured person** is:

    a.   not **occupying** a **motor vehicle**; and

    b.   not entitled to payment of first party benefits under any other **motor vehicle** policy.

    An unoccupied parked **motor vehicle** is not a **motor vehicle** involved in an accident within this Fourth priority unless it was parked in a manner as to create an unreasonable risk of injury.

If two or more policies have equal priority within the highest applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution on a pro rata basis from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers responsible under the Fourth priority, proration shall be based on the number of involved **motor vehicles**.

2. If **we** are the insurer against whom the claim is first made, **our** payment to or for an **insured person** will not exceed the applicable limit of liability for coverage under this Part II shown on the **declarations page**, or if **you** have purchased Extraordinary Medical Benefits Coverage, the applicable limit of liability.

3. The maximum recovery under all policies may not exceed the amount payable under the policy with the highest dollar limits of benefits.

## PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE

### INSURING AGREEMENT—UNINSURED MOTORIST COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;

2. caused by an accident; and

3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

## INSURING AGREEMENT—UNDERINSURED MOTORIST COVERAGE

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

1.  sustained by an **insured person**;
2.  caused by an accident; and
3.  arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.

An **insured person** must notify **us** in writing at least 30 days before entering into any settlement with the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, or any liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**. If **we** do this, the **insured person** shall assign to **us** all rights that **insured person** has against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**, to the extent of **our** payment.

No judgment or settlement for damages arising out of a lawsuit brought against an owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** shall be binding on **us** unless **we** have:

1.  received reasonable notice of the filing of the lawsuit resulting in the judgment; and
2.  had a reasonable opportunity to protect **our** interests in the lawsuit.

### ADDITIONAL DEFINITIONS

When used in this Part III:

1.  "**Insured person**" means:
    a.  **you**, a **relative**, or a **rated resident**;
    b.  any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
    c.  any person **occupying**, but not operating, a **covered auto**; and
    d.  any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.
2.  "**Noneconomic loss**" means pain and suffering and other non-monetary detriment.
3.  "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
    a.  listed in the "Drivers and household residents" section on the **declarations page**; and
    b.  not designated as either an "Excluded" or a "List Only" driver.
    For a coverage under this Part III that has been rejected by the named insured by signing a waiver, a **rated resident** will be considered a **relative** for purposes of the rejected coverage under this Part III.
4.  "**Serious injury**" means **bodily injury** resulting in death, serious impairment of a bodily function, or permanent serious disfigurement.

5. **"Underinsured motor vehicle"** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for **bodily injury** is less than the damages that an **insured person** is entitled to recover from the owner or operator of the motor vehicle because of **bodily injury**.

An "**underinsured motor vehicle**" does not include any vehicle or equipment:

    a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;

    b. operated on rails or crawler treads;

    c. designed mainly for use off public roads, while not on public roads;

    d. while used as a residence or premises and not as a vehicle;

    e. that is a **covered auto**; or

    f. that is an uninsured motor vehicle.

6. **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

    a. to which no bodily injury liability bond or policy applies at the time of the accident;

    b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

        (i) denies coverage; or

        (ii) is insolvent, or becomes insolvent within six years after the accident occurs;

    c. to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the minimum limit of liability for bodily injury specified by the financial responsibility law of the state in which the **covered auto** is principally garaged;

    d. whose owner or operator cannot be identified and that causes an accident resulting in bodily injury to an insured person, provided that the **insured person**, or someone on his or her behalf:

        (i) reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and

        (ii) notifies **us** within 30 days, or as soon as practicable thereafter, that the **insured person** has a cause of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and sets forth the facts in support thereof.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

    a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;

    b. owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;

    c. operated on rails or crawler treads;

    d. designed mainly for use off public roads, while not on public roads;

    e. while located for use as a residence or premises and not as a vehicle;

    f. that is a **covered auto**; or

    g. that is an **underinsured motor vehicle**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:
1. to **bodily injury** sustained by any person while using or **occupying**:
   a. a **covered auto** while being used:
      (i)   to carry persons or property for compensation or a fee;
      (ii)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
      (iii) for **ride-sharing activity**.
      This exclusion does not apply to shared-expense car pools; or
   b. a motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III;
2. to **noneconomic loss** sustained by any person to whom a limited tort option applies unless the **bodily injury** sustained by the **insured person** is a **serious injury**;
3. to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto,** without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
4. to any punitive or exemplary damages;
5. to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent; or
6. to **bodily injury** arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered autos**, unless **you** have selected stacked coverage;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

### Nonstacked Limits of Liability

If you have selected nonstacked coverage under this Part III, the following shall also apply:

If the **declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and

14

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

**Stacked Limits of Liability**

If **you** have selected stacked coverage under this Part III, the following shall also apply to **bodily injury** sustained by **you**, a **relative**, or a **rated resident**:

1. If **you**, a **relative**, or a **rated resident** sustain **bodily injury** while **occupying** a **covered auto**, the limit of liability shall be the limit available under Nonstacked Limits of Liability described above and the limit shown on the **declarations page** multiplied by the number of **covered autos** that are not involved in the **accident**.
2. If **you**, a **relative**, or a **rated resident** sustain **bodily injury** while not **occupying** a **covered auto**, the limit of liability shall be the limit shown on the **declarations page** multiplied by the number of **covered autos**.

Stacked Limits of Liability shall not increase the limit of liability applicable to any **insured person** other than **you**, a **relative**, or a **rated resident**. The nonstacked limits of liability will apply to any **insured person** other than **you**, a **relative**, or a **rated resident**.

As with nonstacked limits, the "each person" stacked limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

**Limits of Liability Applicable to Stacked and Nonstacked Coverage**

In determining the amount payable under this Part III, the amount of damages that an **insured person** is entitled to recover for **bodily injury** will be reduced by all sums paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible.

However, if an **insured person** enters into a settlement agreement for an amount less than the sum of the limits of liability under all applicable bodily injury liability bonds and

policies, **our** limit of liability for Underinsured Motorist Coverage shall not exceed the difference between the damages sustained by the **insured person** and the sum of the applicable bodily injury liability limits.

The Limits of Liability under this Part III shall be reduced by all sums paid under Part I—Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by **us** are in effect for **you, we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER INSURANCE

If there is other applicable similar insurance available, the following priorities of recovery apply:

First     The uninsured or underinsured motorist coverage applicable to the motor vehicle the **insured person** was **occupying** at the time of the accident.

Second  Any other policy affording uninsured or underinsured motorist coverage to the **insured person**.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution on a pro rata basis from any other insurer for the benefits paid and the costs of processing the claim.

If nonstacked coverage is shown on the **declarations page** and this policy is in the First priority, the maximum recovery under all policies in the First priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy in the First priority.

If nonstacked coverage is shown on the **declarations page** and this policy is in the Second priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy in the Second priority.

## PART IV—DAMAGE TO A VEHICLE

## INSURING AGREEMENT—COLLISION COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1.  **covered auto**, including an attached **trailer**; or
2.  **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

## INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1.  **covered auto**, including an attached **trailer**; or
2.  **non-owned auto**;
and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1.  contact with an animal (including a bird);
2.  explosion or earthquake;
3.  fire;
4.  malicious mischief or vandalism;
5.  missiles or falling objects;
6.  riot or civil commotion;
7.  theft or larceny;
8.  windstorm, hail, water or flood; or
9.  breakage of glass not caused by **collision**.

In addition, **we** will pay for:
1.  reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2.  loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.
A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after **you** report the theft to **us** and ends the earliest of:
1.  when the **auto** has been recovered and returned to **you** or its owner;
2.  when the **auto** has been recovered and repaired;
3.  when the **auto** has been replaced; or
4.  72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

**We** will pay for sudden, direct and accidental loss to **custom parts or equipment** on a **covered auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage

applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

## INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

**We** will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the each day limit shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;

    d.   charges for credit insurance or refunds due to the owner for credit insurance;

    e.   past due payments and charges for past due payments; and

    f.   collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **covered auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside a **covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:

1.   up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or

2.   a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:

1.   "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.

2.   "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:

    a.   are permanently installed or attached; and

    b.   alter the appearance or performance of the **auto**.

3.   "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.

4.   "**Non-owned auto**" means an **auto** that is not owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.

5.   "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.

19

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.**

Coverage under this Part IV will not apply for loss:

1. to any vehicle while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;
3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or race-course;
4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected. This exclusion does not apply if the insured claimant was the victim of abuse and that abuse occurred during the claimed property damage loss.
6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;
7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;
8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.
   This exclusion does not apply if the damage results from the theft of a vehicle;
9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle for diminution of value;
11. to any vehicle caused directly or indirectly by:
    a.  war (declared or undeclared) or civil war;
    b.  warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;
12. to any vehicle caused directly or indirectly by:
    a.  any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or
    b.  any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or
13. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of whether **you**, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

1.  The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
    a.  the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
    b.  the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
    c.  the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
    d.  the Stated Amount shown on the **declarations page** for that **covered auto**.
    However, the most **we** will pay for loss to:
    a.  **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
    b.  a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.
2.  Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
    a.  If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
    b.  If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
    c.  Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.

    d.   In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

       (i)   will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

       (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:

          (a)  original manufacturer parts or equipment; and

          (b)  nonoriginal manufacturer parts or equipment.

    e.   To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

    f.   To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:

       (i)   batteries;

       (ii)  tires;

       (iii) engines and transmissions, if the engine has greater than 80,000 miles; and

       (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

          **We** will not make an adjustment for the labor costs associated with the replacement or repair of these parts.

    g.   The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3.   No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

4.   Duplicate recovery for the same elements of damages is not permitted.

5.   The following additional limits of liability apply to Pet Injury coverage:

    a.   The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

    b.   If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

    c.   No deductible shall apply to this coverage.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.   pay for the loss in money; or

2.   repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** or **you** may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request

that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;

7.  assistance with jacks, levelers, airbags or awnings;

8.  labor or repair work performed at a service station, garage, or repair shop;

9.  auto storage charges;

10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;

11. mounting or removing of snow tires or chains;

12. tire repair;

13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;

14. any **covered auto** while being used in connection with **ride-sharing activity**;

15. any **covered auto** while being used in connection with a **personal vehicle sharing program**; or

16. a trailer.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1.  towing of a **covered disabled auto** to the nearest qualified repair facility; and

2.  labor on a **covered disabled auto** at the place of disablement;

which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1.  cooperate with **us** in any matter concerning a claim or lawsuit;

2.  provide any written proof of loss **we** may reasonably require;

3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;

5. attend hearings and trials as **we** require;

6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;

7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;

8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;

9. submit to vocational rehabilitation examinations at **our** expense by rehabilitation specialist **we** select as often as **we** may reasonably require; and

10. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

**POLICY PERIOD AND TERRITORY**

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

**CHANGES**

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:

1. the number, type or use classification of **covered autos**;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;

6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

## DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident.**

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page**

dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time during the first 59 days, including after the occurrence of an accident or loss, if **you**:

1.  made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  concealed or misrepresented any material fact or circumstance; or
3.  engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:

1.  make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  conceal or misrepresent any material fact or circumstance; or
3.  engage in fraudulent conduct;

in connection with a requested change **we** may void the policy if within the first 59 days, or reform the policy as it existed immediately prior to the requested change during any time period. **We** may do this before or after the occurrence of an accident or loss.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 15 days notice of cancellation if:
1.  **we** cancel during the first 59 days of the initial policy period; or
2.  the policy is cancelled for nonpayment of premium.

**We** will give at least 60 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1.  nonpayment of premium;
2.  material misrepresentation, material concealment, or fraud by **you** with respect to any material fact in the procurement, continuation, change or renewal of this policy;
3.  loss of driving privileges through suspension or revocation of an operator's license or motor vehicle registration issued to the named insured;
4.  **your** place of residence or the state of registration or license of a **covered auto** is changed to a state or country in which **we** do not accept applications for the insurance provided by this policy; or
5.  any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if

cancellation is for nonpayment of premium. A cancellation fee will be charged only during the initial policy period.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. If nonrenewal is due to nonpayment of premium or loss of driving privileges through suspension or revocation of the named insured's operator's license or motor vehicle registration, notice will be mailed at least 15 days before the end of the policy period. If nonrenewal is due to any other reason, notice will be mailed at least 60 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

Any action brought against **us** pursuant to coverage under Part III—Uninsured/Underinsured Motorist Coverage must be brought in the county in which the person seeking benefits resides, or in the United States District Court serving that county.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another, to the extent of **our** payment. That insured person may be

required to sign documents related to the recovery and must do whatever else **we** require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. However, this shall not apply to amounts paid by **us** under Part II—First Party Benefits Coverage unless the payments are subject to the Workers' Compensation Act. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

If the total recovery is less than the total of **our** payment and the deductible, **we** will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of **our** payment and the deductible. A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy. Any rejection of coverage available under Part III—Uninsured/Underinsured Motorist Coverage should be made by the first named insured.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.





9611D PA 0216



# EXHIBIT B

STREET ROAD INS
2432 STREET RD
BENSALEM, PA 19020



**Policy Number: 906583772**
Underwritten by:
Progressive Specialty Insurance Co
April 10, 2018
Policy Period:  Jan 17, 2018 - Jul 17, 2018
Page 1 of  4

MARCHELL DAVIS
RAHIEM DAVIS COOKE
221 E BRISTOL RD
FEASTERVILLE TR, PA 19053

**1-215-604-1300**
**STREET ROAD INS**
Contact your agent for personalized service.

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

# Auto Insurance
# Coverage Summary
## This is your Declarations Page
## Your policy information has changed

**1-800-274-4499**
To report a claim.

Your coverage began on January 17, 2018 at 12:01 a.m.  This policy expires on July 17, 2018 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle, unless the policy contract or endorsements indicate otherwise. The policy contract is form 9611A PA (02/16). The contract is modified by forms 4884 (10/08) and A230 (11/16).

## COLLISION COVERAGE FOR RENTAL VEHICLES

**IF THIS POLICY PROVIDES COLLISION COVERAGE, IT WILL APPLY TO VEHICLES YOU RENT, BUT NOT TO VEHICLES RENTED FOR 6 MONTHS OR MORE.**

## FRAUD NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## Policy changes effective April 10, 2018

| | |
|---|---|
| Changes requested on: | Apr 10, 2018 12:38 p.m. |
| Requested by: | MARCHELL DAVIS |
| Premium change: | $486.91 |
| Changes: | Coverage has changed on the 2016 CHRYSLER 300. A Driver and Passenger-side Airbag discount has been added to the 2016 CHRYSLER 300. |

The changes take effect as of the date and time requested shown above.

## Underwriting Company

Progressive Specialty Insurance Co
P.O. Box 6807
Cleveland , OH 44101
1-800-876-5581

## Drivers and resident relatives

Additional information

| | |
|---|---|
| MARCHELL DAVIS | First Named insured |

Continued

| Rahiem Davis Cooke | Named insured |
| --- | --- |

KEVIN WILLIAMS

## Outline of coverage

### 2013 TOYOTA AVALON 4 DOOR SEDAN
VIN: **4T1BK1EB7DU039794**

Garaging ZIP Code: 19053

Primary use of the vehicle:  Pleasure

| | Limits | Deductible | Premium |
| --- | --- | --- | --- |
| Liability To Others | | | $315 |
| Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
| Property Damage Liability | $10,000 each accident | | |
| First Party Benefits | | | 84 |
| Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 12 |
| Underinsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 28 |
| Comprehensive | Actual Cash Value | $1,000 | 97 |
| Collision | Actual Cash Value | $1,000 | 341 |
| Rental Reimbursement | up to $40 each day/maximum 30 days | | 38 |
| Roadside Assistance | | | 5 |
| Total premium for 2013 TOYOTA | | | **$920** |

### 2014 ACURA MDX 4 DOOR WAGON
VIN: **5FRYD4H85EB038999**

Garaging ZIP Code: 19053

Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 1 month but less than 1 year

| | Limits | Deductible | Premium |
| --- | --- | --- | --- |
| Liability To Others | | | $335 |
| Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
| Property Damage Liability | $10,000 each accident | | |
| First Party Benefits | | | 72 |
| Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 14 |
| Underinsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 32 |
| Comprehensive | Actual Cash Value | $1,000 | 61 |
| Collision | Actual Cash Value | $1,000 | 327 |
| Rental Reimbursement | up to $40 each day/maximum 30 days | | 41 |
| Roadside Assistance | | | 5 |
| Total premium for 2014 ACURA | | | **$887** |


Continued

Policy Number:  906583772
MARCHELL DAVIS
Rahiem Davis Cooke
Page 3  of 4

**2012 LAND ROVER RANGE ROVER 4 DOOR WAGON**
VIN: **SALSF2043CA747728**
Garaging ZIP Code: 19053
Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 1 month but less than 1 year

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $320 |
|   Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
|   Property Damage Liability | $10,000 each accident | | |
| First Party Benefits | | | 43 |
|   Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 7 |
| Underinsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 16 |
| Comprehensive | Actual Cash Value | $1,000 | 172 |
| Collision | Actual Cash Value | $1,000 | 479 |
| Rental Reimbursement | up to $40 each day/maximum 30 days | | 36 |
| Roadside Assistance | | | 5 |
| Total premium for 2012 LAND ROVER | | | **$1,078** |

**2016 CHRYSLER 300 4 DOOR SEDAN**
VIN: **2C3CCAAG0GH320967**
Garaging ZIP Code: 19053
Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 1 year but less than 3 years

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $322 |
|   Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
|   Property Damage Liability | $10,000 each accident | | |
| First Party Benefits | | | 83 |
|   Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 19 |
| Underinsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 45 |
| Comprehensive | Actual Cash Value | $1,000 | 147 |
| Collision | Actual Cash Value | $1,000 | 396 |
| Rental Reimbursement | up to $40 each day/maximum 30 days | | 40 |
| Roadside Assistance | | | 5 |
| Total premium for 2016 CHRYSLER | | | **$1,057** |
| **Total 6 month policy premium** | | | **$3,942.00** |

## Premium discounts

| Policy | |
|---|---|
| 906583772 | Multi-Policy, Electronic Funds Transfer (EFT), Home Owner, Multi-Car, Continuous Insurance: Platinum, Paperless and Three-Year Safe Driving |


Continued

| Vehicle | |
|---|---|
| 2013 TOYOTA AVALON | Driver and Passenger-side Airbag and Anti-Theft Device |
| 2014 ACURA MDX | Driver and Passenger-side Airbag and Anti-Theft Device |
| 2012 LAND ROVER RANGE ROVER | Driver and Passenger-side Airbag and Anti-Theft Device |
| 2016 CHRYSLER 300 | Driver and Passenger-side Airbag and Anti-Theft Device |

## Lienholder information

| Vehicle | Lienholder |
|---|---|
| 2013 TOYOTA AVALON 4T1BK1EB7DU039794 | TruMark Financial Credit Union FORT WORTH, TX 76124 |
| 2014 ACURA MDX 5FRYD4H85EB038999 | ALLY FIN (LOAN) COCKEYSVILLE, MD 21030 |
| 2012 LAND ROVER RANGE ROVER SALSF2043CA747728 | AMERICAN CREDIT ACPT CARMEL, IN 46082 |
| 2016 CHRYSLER 300 2C3CCAAG0GH320967 | ALLY FIN (LOAN) COCKEYSVILLE, MD 21030 |

## Tort Option

This policy provides limited tort insurance.

## Company officers

President

Secretary

# EXHIBIT C

# Vehicle Valuation Report

Prepared For Progressive Group of Insurance Companies   (800) 321-9843

mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 18-3539940-01 | | COLLISION | MARCHELL DAVIS 221 E BRISTOL RD FEASTERVILLE TR, PA 19053 +1-215-6097978 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 07/08/2018 | 07/08/2018 | 07/18/2018 | 1007985567 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2014 | Acura | MDX w/Advance & Entertainment Pkg 4 Door Utility 111" WB 3.5L 6 Cyl Gas A AWD | PA 19053 | 89,591 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| | | 5FRYD4H85EB038999 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Dual Source Base Value = | $23,327.08 |
| Condition - | $148.76 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $23,178.32 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| (6.000%) Tax + | $1,390.70 |
| Deductible - | $1,000.00 |
| Settlement Value = | $23,569.02 |

## Settlement Value:
# $23,569.02

J.D. POWER

Mitchell WorkCenter
Total Loss
© 2016 Mitchell International, Inc. All Rights Reserved

# Loss Vehicle Detail

Loss vehicle: 2014 Acura MDX | w/Advance & Entertainment Pkg 4 Door Utility 111" WB | 3.5L 6 Cyl Gas A AWD

## Standard Equipment

### Exterior

| | |
|---|---|
| Body-colored front bumper | Body-Colored Power w/Tilt Down Heated Auto Dimming Side Mirrors w/Convex Spotter, Manual Folding and Turn Signal Indicator |
| Body-Colored Rear Bumper w/Black Rub Strip/Fascia Accent | Chrome door handles |
| Chrome Side Windows Trim and Black Front Windshield Trim | Clearcoat paint |
| Compact Spare Tire Stored Underbody w/Crankdown | Deep tinted glass |
| Express Open/Close Sliding And Tilting Glass 1st Row Sunroof w/Sunshade | Fixed Rear Window w/Fixed Interval Wiper and Defroster |
| Galvanized Steel/Aluminum Panels | Laminated Glass |
| LED brakelights | Lip spoiler |
| Metal-Look Grille w/Chrome Surround | Perimeter/Approach Lights |
| Power Liftgate Rear Cargo Access | Programmable Projector Beam Led Low/High Beam Daytime Running Headlamps w/Delay-Off |
| Roof Rack Rails Only | Speed Sensitive Rain Detecting Variable Intermittent Wipers |
| Steel spare wheel | Tailgate/Rear Door Lock Included w/Power Door Locks |
| Tires: P245/55R19 103H High Performance AS | Wheels w/Silver Accents |
| Wheels: 19" x 8" Aluminum-Alloy | |

### Interior

| | |
|---|---|
| 2 LCD Monitors In The Front and 1 LCD Row Monitor In The Rear | 2 Seatback Storage Pockets |
| 2 Wireless Headphones | 3 12V DC Power Outlets |
| 3 12V DC Power Outlets and 1 AC Power Outlet | 60-40 Folding Split-Bench Front Facing Heated Manual Reclining Fold Forward Seatback Leather Rear Seat w/Manual Fore/Aft |
| A/V Remote | Acuralink Real-Time Traffic Real-Time Traffic Display |
| Air filtration | Analog Display |
| Audio Theft Deterrent | Bluetooth Handsfreelink Wireless Phone Connectivity |
| Cargo Area Concealed Storage | Cargo Space Lights |
| Carpet Floor Trim | Cruise control w/steering wheel controls |
| Day-Night Auto-Dimming Rearview Mirror | Delayed Accessory Power |
| Digital Signal Processor | Distance Pacing w/Traffic Stop-Go |
| Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination | Driver foot rest |
| Entertainment System w/DVD | Fade-to-off interior lighting |
| Fixed 50-50 Split-Bench Leatherette 3rd Row Seat Front, Manual Fold Into Floor, Number, Control and Type Head Restraint | Front And Rear Map Lights |
| Front Center Armrest w/Storage and Rear Center Armrest | Front Cupholder |
| Full Carpet Floor Covering -inc: Carpet Front And Rear Floor Mats | Full cloth headliner |
| Full Floor Console w/Covered Storage, Mini Overhead Console w/Storage, 3 12V DC Power Outlets and 1 AC Power Outlet | Head-up display |
| Heated & Ventilated Front Sport Seats -inc: driver's 10-way power seat w/power lumbar support, front passenger's 8-way power seat w/power lumbar support and stain resistant | HomeLink Garage Door Transmitter |

| | |
|---|---|
| HVAC -inc: Underseat Ducts and Console Ducts | Illuminated locking glove box |
| Integrated Navigation System w/Voice Activation | Interior Concealed Storage, Driver / Passenger And Rear Door Bins |
| Interior Trim -inc: Simulated Wood/Metal-Look Instrument Panel Insert, Simulated Wood/Metal-Look Door Panel Insert, Simulated Wood/Metal-Look Console Insert, Aluminum And Metal-Look Interior Accents | Leather Door Trim Insert |
| Leather Front Seats w/Leatherette Back Material | Leather/Metal-Look Gear Shift Knob |
| Leather/Metal-Look Steering Wheel w/Auto Tilt-Away | Manual Type Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints |
| Memory Settings For 2 -inc: Driver Seats, Door Mirrors and Steering Wheel | Outside temp gauge |
| Perimeter alarm | Power 1st Row Windows w/Front And Rear 1-Touch Up/Down |
| Power Door Locks w/Autolock Feature | Power Rear Windows, Fixed 3rd Row Windows and w/Manual Sun Blinds |
| Power Tilt/Telescoping Steering Column | Proximity Key For Doors And Ignition |
| Radio w/Clock, Steering Wheel Controls, Multi-Source Rear Controls and Voice Activation | Radio: Acura/ELS Studio Premium Audio System -inc: hard disk drive (HDD) media storage, 12 speakers, Song by Voice, Aha compatibility, HD Radio, XM Radio, Pandora compatibility, USB audio interface w/iPod integration, Bluetooth streaming audio, MP3/auxiliary input jack and Speed-sensitive Volume compensation (SVC) |
| Rear cupholder | Rear HVAC w/Separate Controls |
| Remote Keyless Entry w/Integrated Key Transmitter, 4 Door Curb/Courtesy, Illuminated Entry, Illuminated Ignition Switch and Panic Button | Remote Releases -inc: Power Trunk/Hatch and Power Fuel |
| Systems Monitor | Trip computer |
| Trunk/Hatch Auto-Latch | Valet Function |
| Voice Activated Dual Zone Front Automatic Air Conditioning | Window Grid Antenna |

## Mechanical

| | |
|---|---|
| 150 amp alternator | 19.5 Gal. Fuel Tank |
| 4-Wheel Disc Brakes w/4-Wheel ABS, Front Vented Discs, Brake Assist and Hill Hold Control | 4.25 Axle Ratio |
| 76-Amp/Hr Maintenance-Free Battery w/Run Down Protection | Automatic Full-Time All-Wheel Drive |
| Automatic Ride Control Suspension | Electric Power-Assist Speed-Sensing Steering |
| Electro-Mechanical Limited Slip Differential | Front And Rear Anti-Roll Bars |
| Gas-pressurized shock absorbers | GVWR: TBD |
| Multi-link rear suspension w/coil springs | Permanent Locking Hubs |
| Single stainless steel exhaust | Strut Front Suspension w/Coil Springs |
| Towing w/Trailer Sway Control | |

## Safety

| | |
|---|---|
| ABS And Driveline Traction Control | Active Lane Departure Warning |
| Airbag Occupancy Sensor | Blind Spot Sensor |
| Curtain 1st, 2nd And 3rd Row Airbags | Driver knee airbag |
| Dual Stage Driver And Passenger Front Airbags | Dual Stage Driver And Passenger Seat-Mounted Side Airbags |
| Forward Collision Mitigation | Front And Rear Parking Sensors |
| Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners | Rear camera |
| Rear child safety locks | Side impact beams |
| Tire Specific Low Tire Pressure Warning | Vehicle Stability Assist Electronic Stability Control (ESC) |

## Loss Vehicle Dual Source Base Value

Loss vehicle:  2014 Acura MDX w/Advance & Entertainment Pkg 4 Door Utility 111" WB 3.5L 6 Cyl Gas A AWD

Guide Valuation: N.A.D.A. Eastern  -  Retail Value                    WORKCENTER™ TOTAL LOSS

| | | | |
|---|---|---|---|
| Base Value: | $25,750.00 | Base Value: | $23,304.15 |
| Mileage Adjustment: | -$2,400.00 | | |
| Option Adjustment | No Adjustment | | |
| Total Retail Value: | $23,350.00 | | |

Dual Source Average Base Value:                                           $23,327.08

Claim # 18-3539940-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 4

# Loss Vehicle Base Value

Loss vehicle: 2014 Acura MDX | w/Advance & Entertainment Pkg 4 Door Utility 111" WB | 3.5L 6 Cyl Gas A AWD

## Comparable Vehicle Information

Search Radius used for this valuation: 75 miles from loss vehicle zip/postal code.
Typical Mileage for this vehicle: 52,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5NORMAL GAS A AWD | 80,282 | 11377 | 69 miles | $22,460.00 Sold Price | $21,887.80 |
| 2 | 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5NORMAL GAS A AWD | 92,802 | 19047 | 5 miles | $24,998.00 List Price | $25,133.09 |
| 3 | 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5NORMAL GAS A AWD | 64,579 | 08648 | 16 miles | $25,913.00 List Price | $22,986.70 |
| 4 | 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5NORMAL GAS A AWD | 65,129 | 07513 | 68 miles | $25,900.00 List Price | $23,209.01 |

**Base Value:** **$23,304.15**

# Loss Vehicle Adjustments

Loss vehicle: 2014 Acura MDX | w/Advance & Entertainment Pkg 4 Door Utility 111" WB | 3.5L 6 Cyl Gas A AWD

## Condition Adjustments

Condition Adjustment: -$148.76        Overall Condition: 2.83-Good        Typical Vehicle Condition: 3.00

| Category | Condition | Comments |
|---|---|---|
| Interior | | |
| SEATS | 3 Good | |
| CARPET | 3 Good | |
| HEADLINER | 2 Fair | Stained |
| DOORS/INTERIOR PANELS | 2 Fair | Greater than 2 gouges to trunk area trim |
| GLASS | 3 Good | |
| DASH/CONSOLE | 2 Fair | gouges to center console back |
| Exterior | | |
| PAINT | 3 Good | |
| BODY | 3 Good | |
| VINYL/CONVERTIBLE TOP | Typical | |
| TRIM | 2 Fair | Multiple small impacts to rear bumper |
| Mechanical | | |
| ENGINE | 3 Good | |
| TRANSMISSION | 3 Good | |
| Tire | 2 Fair | LF3,LR4,RR3,RF2 |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type / age.

Comments:

## Comparable Vehicles

Loss vehicle:  2014 Acura MDX | w/Advance & Entertainment Pkg 4 Door Utility 111" WB | 3.5L 6 Cyl Gas A AWD

---

**1   2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5 NORMAL GAS AAWD    Sold Price: $22,460.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5FRYD4H80EBXXXXXX | | 06/30/2018 | 11377 | 69 miles |

Source

FRANCHISE SALE – J.D. POWER AND ASSOCIATES

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 89,591 | 80,282 | -$572.20 |
| | | Total Adjustments: | -$572.20 |
| | | **Adjusted Price:** | **$21,887.80** |

---

**2   2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5 NORMAL GAS AAWD    List Price: $24,998.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5FRYD4H86EB019877 | 15601052 | 05/02/2018 | 19047 | 5 miles |

Source

DEALER WEB LISTING - CARS.COM
CARMAX LANGEHORN
1776 LINCOLN HWY
LANGHORNE PA 19047
215-377-9177

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | $0.00 |
| Mileage | 89,591 | 92,802 | $135.09 |
| | | Total Adjustments: | $135.09 |
| | | **Adjusted Price:** | **$25,133.09** |

Claim # 18-3539940-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 6

## 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5 NORMAL GAS AAWD        List Price: **$25,913.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5FRYD4H8XEB017050 | PB017050 | 07/07/2018 | 08648 | 16 miles |

**Source**

DEALER WEB LISTING -
AUTOTRADER.COM

PRECISION ACURA OF PRINCETON

3001 US HIGHWAY 1

LAWRENCE TOWNSHIP NJ 08648

609-895-0600

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$962.00 |
| Mileage | 89,591 | 64,579 | -$1,964.30 |
| | | Total Adjustments: | -$2,926.30 |
| | | **Adjusted Price:** | **$22,986.70** |

## 2014 ACURA MDX W/ADVANCE & ENTERTAINMENT PKG 4D SUV 6 3.5 NORMAL GAS AAWD        List Price: **$25,900.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 5FRYD4H89EB028220 | EB028220 | 07/05/2018 | 07513 | 68 miles |

**Source**

DEALER WEB LISTING - CARS.COM

NORTHEAST MOTOR CARS INC

664 MARKET ST

PATERSON NJ 07513

973-345-7000

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$771.00 |
| Mileage | 89,591 | 65,129 | -$1,919.99 |
| | | Total Adjustments: | -$2,690.99 |
| | | **Adjusted Price:** | **$23,209.01** |

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2014 Acura MDX w/Advance & Entertainment Pkg | 4 Door Utility 111" WB 3.5L 6 Cyl Gas  AWD | $56,505.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Any person who knowingly and with intent to defraud any insurer, self-insured, insurance licensee, person or the public files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.  Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

# EXHIBIT D

Progressive Group of Insurance Companies

# Settlement Summary

### Claim Information

| | | | |
|---|---|---|---|
| **Claim Number:** 18-3539940-01 | | **Coverage Type of Loss:** Collision | |
| **Policy Number:** | | **Loss Date:** 07/08/2018 | |
| **Owner :** DAVIS, MARCHELL | | **Reported Date:** 07/08/2018 | |
| | | **Valuation Report ID:** 1007985567 | |

### Vehicle Information

| | |
|---|---|
| **Loss Vehicle:** 2014 Acura MDX w/Advance & Entertainment Pkg 4 Door Utility 111" WB 3.5L 6 Cyl Gas A AWD | **Location:** PA 19053 |
| **VIN:** 5FRYD4H85EB038999 | **Exterior Color:** |
| **Mileage:** 89,591 miles | **License Plate:** |
| **Title History:** No | **Title History Comments:** |

| **Loan Information** | | **Payment Information** | |
|---|---|---|---|
| **Lien Holder Payoff:** | $0.00 | **Lien Holder Payment(s):** | $0.00 |
| **Loan/Lease Payoff Coverage:** | $0.00 | **Net to Owner:** | $23,569.02 |

# Settlement

| | |
|---|---|
| **Stated Amount:** | $0.00 |
| **Actual Cash Value:** | $23,178.32 |
| Base Value: | $23,327.08 |
| Title History Adjustment: | -$0.00 |
| Refurbishment Adjustments: | $0.00 |
| After Market Parts Adjustment: | $0.00 |
| Condition Adjustment: | -$148.76 |
| Prior Damage Adjustment: | -$0.00 |
| **Market Value:** | $ 23,178.32 |
| Settlement Adjustment(Pre-Tax): | $0.00 |
| **Fees:** | $0.00 |
| **Taxes:** | $1,390.70 |
| **Company Obtains:** | $0.00 |
| **Net Settlement:** | $24,569.02 |
| **Settlement Adjustment(Post-Tax):** | $0.00 |
| **Deductible:** | -$1,000.00 |
| **Other Adjustments:** | $ 0.00 |
| **Total Settlement:** | $23,569.02 |

**Adjuster License #:**

**Comments:**

# EXHIBIT E

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631


DIRECT Auto

**Policy Number: 920896886**
Underwritten by:
Progressive Advanced Insurance Co
May 10, 2018
Policy Period: Apr 9, 2018 - Oct 9, 2018
Page 1 of 3

BRANDY L GRESS
11340 PUNCH BOWL ROAD
MERCERSBURG, PA 17236

**progressive.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-776-4737**
For customer service and claims service,
24 hours a day, 7 days a week.

# Auto Insurance
# Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began on April 9, 2018 at the later of 12:01 a.m. or the effective time shown on your application. This policy period ends on October 9, 2018 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle, unless the policy contract or endorsements indicate otherwise. The policy contract is form 9611D PA (02/16). The contract is modified by forms 4884 (10/08), Z357 (01/07) and A230 (11/16).

## COLLISION COVERAGE FOR RENTAL VEHICLES
**IF THIS POLICY PROVIDES COLLISION COVERAGE, IT WILL APPLY TO VEHICLES YOU RENT, BUT NOT TO VEHICLES RENTED FOR 6 MONTHS OR MORE.**

## FRAUD NOTICE
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## Policy changes effective May 4, 2018

| | |
|---|---|
| Changes requested on: | May 4, 2018 |
| Requested by: | Brandy L Gress |
| Premium change: | -$6.88 |
| Changes: | Coverage has been changed on the policy. |

## Underwriting Company
Progressive Advanced Insurance Co
P.O. Box 31260
Tampa , FL 33631
1-800-776-4737

## Drivers and resident relatives

| | Additional information |
|---|---|
| Brandy L Gress | First Named Insured |
| MICHAEL J GRESS | |

Form 6489 PA (01/17)


Continued

Policy Number:  920896886

Brandy L Gress

Page 2  of 3

Charity A Gress

## Outline of coverage

### 2017 JEEP RENEGADE 4 DOOR WAGON

VIN: **ZACCJBCBXHPF34535**

Garaging ZIP Code: 17236

Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 1 month but less than 1 year

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $275 |
|   Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
|   Property Damage Liability | $5,000 each accident | | |
| First Party Benefits | | | 65 |
|   Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 5 |
| Underinsured Motorist - Nonstacked | $15,000 each person/$30,000 each accident | | 5 |
| Comprehensive | Actual Cash Value | $1,000 | 191 |
| Collision | Actual Cash Value | $1,000 | 375 |
| Total premium for 2017 JEEP | | | **$916** |

### 2007 HONDA CIVIC 2 DOOR COUPE

VIN: **2HGFG21577H704053**

Garaging ZIP Code: 17236

Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 3 years but less than 5 years

Information regarding your vehicle history (prior damage, theft or title issues) has impacted how we determine your premium.

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $293 |
|   Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
|   Property Damage Liability | $5,000 each accident | | |
| First Party Benefits | | | 83 |
|   Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 6 |
| Underinsured Motorist - Nonstacked | $15,000 each person/$30,000 each accident | | 7 |
| Comprehensive | Actual Cash Value | $250 | 252 |
| Total premium for 2007 HONDA | | | **$641** |

### 2005 SCION TC 2 DOOR HATCHBACK

VIN: **JTKDE177750012464**

Garaging ZIP Code: 17236

Primary use of the vehicle:  Commute

Length of vehicle ownership when policy started or vehicle added: At least 1 year but less than 3 years

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $358 |
|   Bodily Injury Liability | $15,000 each person/$30,000 each accident | | |
|   Property Damage Liability | $5,000 each accident | | |
| First Party Benefits | | | 76 |
|   Medical Expenses | $5,000 each person | | |
| Uninsured Motorist - Stacked | $15,000 each person/$30,000 each accident | | 6 |
| Underinsured Motorist - Nonstacked | $15,000 each person/$30,000 each accident | | 6 |
| Comprehensive | Actual Cash Value | $250 | 209 |
| Total premium for 2005 SCION | | | **$655** |
| **Total 6 month policy premium** | | | **$2,212.00** |

Form 6489 PA (01/17)

Continued

## Premium discounts

| Policy | |
| --- | --- |
| 920896886 | Multi-Policy, Online Signature - First Policy Period Only, Home Owner, Online Quote, Multi-Car, Continuous Insurance: Platinum and Paperless |

| Driver | |
| --- | --- |
| Charity A Gress | Teen Driver and Good Student |

| Vehicle | |
| --- | --- |
| 2017 JEEP RENEGADE | Driver and Passenger-side Airbag |
| 2007 HONDA CIVIC | Driver and Passenger-side Airbag |
| 2005 SCION TC | Driver and Passenger-side Airbag |

## Lienholder information

| Vehicle | Lienholder |
| --- | --- |
| 2017 JEEP RENEGADE ZACCJBCBXHPF34535 | ALLY BANK COCKEYSVILLE, MD 21030 |

## Tort Option

This policy provides limited tort insurance.

## Information Regarding Your Premium

A surcharge of $699.00 due to violations or accidents is included in the total policy premium.

## Company officers

President

Secretary

# EXHIBIT F

# Vehicle Valuation Report

Prepared For Progressive Group of Insurance Companies   (800) 321-9843


mitchell

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 18-1227871-01 | | COMPREHENSIVE | BRANDY GRESS 11340 PUNCH BOWL ROAD MERCERSBURG, PA 17236 +1-717-4463837 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 05/17/2018 | 05/17/2018 | 05/18/2018 | 1007813837 | 1 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2007 | Honda | Civic SI 2 Door Coupe 2.0L 4 Cyl Gas M FWD | PA 17236 | 189,283 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| Fiji Blue Pearl | | 2HGFG21577H704053 | No |

## Valuation Summary

Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Dual Source Base Value = | $5,765.54 |
| Condition | $0.00 |
| Prior Damage | $0.00 |
| Aftermarket Parts + | $20.00 |
| Refurbishment | $0.00 |
| Market Value = | $5,785.54 |

Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| Deductible - | $250.00 |
| Settlement Value = | $5,535.54 |

# Settlement Value:
# $5,535.54

Mitchell WorkCenter™
Total Loss
© 2018 Mitchell International, Inc. All Rights Reserved

# Loss Vehicle Detail

Loss vehicle: 2007 Honda Civic | SI 2 Door Coupe | 2.0L 4 Cyl Gas M FWD

## Standard Equipment

### Exterior

| | |
|---|---|
| Body-color bumpers | Body-color door handles |
| Body-color low-profile rear wing spoiler | Body-color pwr mirrors |
| Daytime running lights | Multi-reflector halogen headlamps w/amber trim rings |
| One-touch pwr moonroof w/tilt feature | Tinted glass |
| Variable intermittent windshield wipers | |

### Interior

| | |
|---|---|
| (2) 12-volt pwr outlets | 60/40 fold down rear seatback |
| Air conditioning w/air-filtration system | AM/FM stereo w/CD player-inc: clock, (7) speakers w/subwoofer, 350-watt amp, XM ready, MP3/WMA compatable, aux input jack, speed-sensitive volume control (SVC), text display |
| Ambient red console lighting | Cargo area light |
| Center console w/sliding armrest, storage compartment | Coin tray |
| Cruise control | Digital odometer & (2) digital trip meters |
| Driver footrest | Dual visor vanity mirrors |
| Floor mats | Front door pocket storage bins |
| Front sport bucket seats-inc: reclining seatbacks, driver seat manual height adjustment, adjustable active head restraints | Front/rear beverage holders |
| Headlights-on reminder | Immobilizer theft-deterrent system |
| Indicator lights-inc: low-fuel, low-oil pressure, fuel/coolant temp, door/trunk open, front side/passenger airbag-off | Integrated rear window antenna |
| Leather-wrapped aluminum shift knob | Maintenance Minder system |
| Map lights | Outside temp gauge |
| Passenger seat "walk-in" feature w/memory | Passenger-side seatback pocket |
| Perforated leather-wrapped tilt/telescoping steering wheel | Pwr door locks w/auto-lock feature |
| Pwr windows w/auto-up/down driver window | Rear seat garment hooks |
| Rear window defroster w/timer | Remote fuel filler door release |
| Satin-finish door handle pulls | Security system w/remote entry, trunk release w/lock |
| Steering wheel mounted cruise & audio controls | Tachometer |
| Textured aluminum pedals | Two-tier instrument panel w/red backlit gauges |

### Mechanical

| | |
|---|---|
| 17" alloy wheels | Anti-lock braking system (ABS) w/electronic brake distribution (EBD) |
| Chrome exhaust finisher | Compact spare tire & wheel |
| Drive-by-wire throttle | Electric pwr rack & pinion steering |
| Front wheel drive | Helical limited-slip differential |

| | |
|---|---|
| MacPherson strut front suspension w/stabilizer bar | Multi-Link rear suspension w/stabilizer bar |
| P215/45R17 all-season tires | Pwr vented front/solid rear disc brakes |
| Stainless steel exhaust manifold | Vehicle Stability Assist (VSA) w/traction control |

## Safety

| | |
|---|---|
| Driver & front passenger side-impact airbags w/passenger side occupant position detection system (OPDS) | Dual-stage, dual-threshold driver & front passenger airbags (SRS) |
| Emergency trunk opener | Front/rear 3-point seat belts w/front automatic tensioning system |
| Outboard child safety seat anchors (LATCH) | Side curtain airbags |
| Side-impact door beams | |

## N.A.D.A Vehicle Equipment  [ 2007 HONDA Civic-4 Cyl. Coupe 2D Si FG215  ]

ALUMINUM/ALLOY WHEELS

# Loss Vehicle Dual Source Base Value

Loss vehicle:  2007 Honda Civic SI 2 Door Coupe 2.0L 4 Cyl Gas M FWD

Guide Valuation: N.A.D.A. Eastern  -  Retail Value                     WORKCENTER™ TOTAL LOSS

| | | | | |
|---|---|---|---|---|
| Base Value: | $6,650.00 | | Base Value: | $5,381.08 |
| Mileage Adjustment: | -$500.00 | | | |
| Aluminum/Alloy Wheels: | Inclusive | | | |
| Total Retail Value: | $6,150.00 | | | |

Dual Source Average Base Value:                                          $5,765.54

## Loss Vehicle Base Value

Loss vehicle:  2007 Honda Civic |  SI 2 Door Coupe | 2.0L 4 Cyl Gas M FWD

## Comparable Vehicle Information

Search Radius used for this valuation:  150 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle:  120,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 148,934 | 21740 | 19 miles | $6,000.00 Sold Price | $5,322.62 |
| 2 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 116,407 | 15065 | 108 miles | $7,300.00 Sold Price | $5,642.42 |
| 3 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 155,255 | 17028 | 80 miles | $6,500.00 List Price | $5,353.90 |
| 4 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 125,601 | 17601 | 89 miles | $6,999.00 List Price | $5,117.88 |
| 5 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 130,003 | 22554 | 101 miles | $7,995.00 List Price | $5,944.01 |
| 6 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 124,467 | 15146 | 103 miles | $7,220.00 List Price | $5,240.81 |
| 7 | 2007 HONDA CIVIC SI 2D CPE 4 2NORMAL GAS M 2WD | 161,192 | 22408 | 116 miles | $5,988.00 List Price | $5,045.95 |

**Base Value:**  **$5,381.08**

## Loss Vehicle Adjustments

Loss vehicle:  2007 Honda Civic | SI 2 Door Coupe | 2.0L 4 Cyl Gas M FWD

## Condition Adjustments

Condition Adjustment:  $0.00          Overall Condition:  3.00-Good          Typical Vehicle Condition:  3.00

| Category | Condition | Comments |
|---|---|---|
| **Interior** | | |
| SEATS | 3 Good | |
| GLASS | 3 Good | |
| DASH/CONSOLE | 3 Good | |
| DOORS/INTERIOR PANELS | 3 Good | |
| HEADLINER | 3 Good | |
| CARPET | 3 Good | |
| **Exterior** | | |
| BODY | 3 Good | |
| TRIM | 3 Good | |
| VINYL/CONVERTIBLE TOP | Typical | |
| PAINT | 3 Good | |
| **Mechanical** | | |
| ENGINE | Typical | |
| TRANSMISSION | Typical | |
| **Tire** | 3 Good | 7/32 Tread Remains |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type /
age.

Comments:

## After Market Parts and OEM Equipment Adjustments

| Category | Description | Adjustment Type | Purchase Date | Amount Paid | Adjustment Amount |
|---|---|---|---|---|---|
| MECHANICAL | AFTERMARKET ROTORS | MANUAL | | | $0.00 |
| INTERIOR | FLOOR MATS (NON-OEM) | INSTANT QUOTE | | | $0.00 |
| MECHANICAL | AFTERMARKET BRAKES | MANUAL | | | $0.00 |
| EXTERIOR | WIND DEFLECTOR (WINDOWS/SUNROOF) | INSTANT QUOTE | | | $0.00 |
| INTERIOR | WINDOW TINT- COUPE / 3 DOOR HB | INSTANT QUOTE | | | $20.00 |

# Comparable Vehicles

Loss vehicle:  2007 Honda Civic | SI 2 Door Coupe | 2.0L 4 Cyl Gas M FWD

| **2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD** | Sold Price:  $6,000.00 |
|---|---|



| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21597HXXXXXX | | 03/12/2018 | 21740 | 19 miles |

Source

FRANCHISE SALE - J.D. POWER
AND ASSOCIATES

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 189,283 | 148,934 | -$677.38 |
| | | Total Adjustments: | -$677.38 |
| | | **Adjusted Price:** | **$5,322.62** |

---

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD    Sold Price: $7,300.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21597HXXXXXX | | 02/24/2018 | 15065 | 108 miles |

Source

FRANCHISE SALE - J.D. POWER
AND ASSOCIATES

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 189,283 | 116,407 | -$1,657.58 |
| | | Total Adjustments: | -$1,657.58 |
| | | **Adjusted Price:** | **$5,642.42** |

---

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD    List Price: $6,500.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21567H709650 | 17188 | 03/19/2018 | 17028 | 80 miles |

Source

DEALER WEB LISTING - VAST.COM
MALAKIN MOTORS
9889 ALLENTOWN BOULEVARD
GRANTVILLE PA 17028
717-469-4698

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$612.00 |
| Mileage | 189,283 | 155,255 | -$534.10 |
| | | Total Adjustments: | -$1,146.10 |
| | | **Adjusted Price:** | **$5,353.90** |

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD

**List Price:  $6,999.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21577H710404 | 2369A | 04/30/2018 | 17601 | 89 miles |

Source

DEALER WEB LISTING - VAST.COM
KEIM PRE-OWNED
1310 MANHEIM PIKE
LANCASTER PA 17601
717-295-9300

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$643.00 |
| Mileage | 189,283 | 125,601 | -$1,238.12 |
| | | Total Adjustments: | -$1,881.12 |
| | | **Adjusted Price:** | **$5,117.88** |

---

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD

**List Price:  $7,995.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21567H711107 | DMV1224 | 03/01/2018 | 22554 | 101 miles |

Source

DEALER WEB LISTING - VAST.COM
KARGAR MOTORS
3316 JEFFERSON DAVIS HIGHWAY
STAFFORD VA 22554
540-657-9900

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$752.00 |
| Mileage | 189,283 | 130,003 | -$1,298.99 |
| | | Total Adjustments: | -$2,050.99 |
| | | **Adjusted Price:** | **$5,944.01** |

---

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD

**List Price:  $7,220.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21527H703120 | 45101B | 04/12/2018 | 15146 | 103 miles |

| Source | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|
| DEALER WEB LISTING - AUTOTRADER.COM VALLEY HONDA 4221 WILLIAM PENN HWY MONROEVILLE PA 15146 412-373-3000 | Projected Sold Adjustment | | | -$679.00 |
| | Mileage | 189,283 | 124,467 | -$1,300.19 |
| | | | Total Adjustments: | -$1,979.19 |
| | | | **Adjusted Price:** | **$5,240.81** |

### 2007 HONDA CIVIC SI 2D CPE 4 2 NORMAL GAS M2WD          List Price: **$5,988.00**

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| 2HGFG21547H702308 | 4631 | 04/03/2018 | 22408 | 116 miles |

| Source | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|
| DEALER WEB LISTING - AUTOTRADER.COM STAR CARS 10921 COURTHOUSE RD FREDERICKSBURG VA 22408 540-710-9099 | Projected Sold Adjustment | | | -$563.00 |
| | Mileage | 189,283 | 161,192 | -$379.05 |
| | | | Total Adjustments: | -$942.05 |
| | | | **Adjusted Price:** | **$5,045.95** |

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2007 Honda Civic SI | 2 Door Coupe 2.0L 4 Cyl Gas  FWD | $21,090.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Any person who knowingly and with intent to defraud any insurer, self-insured, insurance licensee, person or the public files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.  Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

# EXHIBIT G

Progressive Group of Insurance Companies

# Settlement Summary

**Claim Information**

| | |
|---|---|
| **Claim Number:** 18-1227871-01 | **Coverage Type of Loss:** Comprehensive |
| **Policy Number:** | **Loss Date:** 05/17/2018 |
| **Owner :** GRESS, BRANDY | **Reported Date:** 05/17/2018 |
| | **Valuation Report ID:** 1007813837 |

**Vehicle Information**

| | |
|---|---|
| **Loss Vehicle:** 2007 Honda Civic SI 2 Door Coupe 2.0L 4 Cyl Gas M FWD | **Location:** PA 17236 |
| **VIN:** 2HGFG21577H704053 | **Exterior Color:** Fiji Blue Pearl |
| **Mileage:** 189,283 miles | **License Plate:** |
| **Title History:** No | **Title History Comments:** |

| Loan Information | | Payment Information | |
|---|---|---|---|
| **Lien Holder Payoff:** | $0.00 | **Lien Holder Payment(s):** | $0.00 |
| **Loan/Lease Payoff Coverage:** | $0.00 | **Net to Owner:** | $4,135.54 |

# Settlement

| | |
|---|---|
| **Stated Amount:** | $0.00 |
| **Actual Cash Value:** | $5,785.54 |
| Base Value: | $5,765.54 |
| Title History Adjustment: | -$0.00 |
| Refurbishment Adjustments: | $0.00 |
| After Market Parts Adjustment: | $20.00 |
| Condition Adjustment: | $0.00 |
| Prior Damage Adjustment: | -$0.00 |
| **Market Value:** | $ 5,785.54 |
| Settlement Adjustment(Pre-Tax): | $0.00 |
| **Fees:** | $0.00 |
| **Taxes:** | $0.00 |
| **Owner Retains:** | -$1,400.00 |
| **Net Settlement:** | $4,385.54 |
| **Settlement Adjustment(Post-Tax):** | $0.00 |
| **Deductible:** | -$250.00 |
| **Other Adjustments:** | $ 0.00 |
| **Total Settlement:** | $4,135.54 |

**Adjuster License #:**

**Comments:**