### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCHELL DAVIS, et al., : | |
|    Plaintiffs, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| PROGRESSIVE ADVANCED : | |
| INSURANCE COMPANY, et al., : | No. 19-5726 |
|    Defendants. : | |

### MEMORANDUM OPINION

**TIMOTHY R. RICE**                                                                                              February 12, 2021
**U.S. MAGISTRATE JUDGE**

      Plaintiffs Marchell Davis and Brandy Gress have sued Defendants Progressive Advanced Insurance Company and Progressive Specialty Insurance Company for breaching their respective insurance policies (collectively, the "Policy") by failing to pay the full costs of replacing their insured vehicles.[1]  Compl. (doc. 1).  Plaintiffs and Progressive each seek summary judgment.  Plaintiffs argue: 1) they are entitled to the actual cash value ("ACV") for a total loss to their vehicles; and 2) the ACV includes replacement costs such as mandatory title and registration fees.[2]  Pl. Mot. (doc. 35).  Progressive argues its Policy: 1) promises to pay only for "sudden, direct and accidental loss" to a covered auto; and 2) limits a covered loss to the vehicle's ACV, which does not include replacement costs.  Def. Mot. (doc. 34).  Adhering to the plain language

---

[1]     The parties agree that Davis's policy with Progressive Specialty and Gress's policy with Progressive Advantage were "materially identical" for purposes of this case.  Joint Stip. (doc. 33) ¶ 5

[2]     Plaintiffs also allege Progressive breached Gress's Policy by failing to compensate her for state sales tax.  Compl. ¶ 50.  The parties have since agreed that this was a mistake and Progressive has paid Gress the appropriate sales tax.  Joint Stip. ¶¶ 33-35.  Therefore, this issue is no longer in dispute.

of the Policy, I find it obligates Progressive to pay the ACV in the event of total loss, but the ACV does not include replacement costs.

I.      Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The proper construction of an insurance policy is a legal issue appropriate for determination by the court, not a jury.  See Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 138 (3d Cir. 2005).

When a policy's terms are "clear and unambiguous," I recognize its "plain and ordinary meaning."  12th St. Gym, Inc. v. General Star Indem. Co., 93 F.3d 1158, 1165 (3d Cir. 1996).  When the terms are ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement."  Sylvester v. Depositors Ins. Co., No. 20-1322, 2020 WL 4934361, *4 (E.D. Pa. Aug. 24, 2020), at *4 (quoting Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006)).[3]

The pivotal question is whether the plain language of Plaintiffs' policies require Progressive to pay Plaintiffs the ACV, and if so, if the ACV includes mandatory title or registration-related fees.  I hold that Progressive owes the ACV but not the fees.

II.     Undisputed Facts

Plaintiffs' vehicles suffered a total loss.  Joint Stip. ¶¶ 21, 29.  Progressive Specialty settled Davis's loss by paying her $23,569.02, the automobile's ACV plus sales tax reduced by the deductible.  Joint Stip. ¶¶ 21, 23.  Likewise, Progressive Advanced settled Gress's total loss

---

[3]     Because my jurisdiction over this matter is premised upon diversity of a potential class action claim under 28 U.S.C. § 1332(d)(2), I apply the substantive law of Pennsylvania, the forum state.  See Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

2

by paying her $4,482.67, the ACV plus sales tax less the deductible and salvage value.  Id. ¶¶ 29-30, 35.  Neither settlement included regulatory fees.  Id. ¶¶ 25, 32.

In Part IV of the Policy, Progressive provides it will pay for "sudden, direct and accidental loss to a [] covered auto."  Joint Stip., Exs. A-B (the Policy).  Part IV of the Policy features a section titled "Limits of Liability," which states "the limit of liability for loss to a covered auto" is the lowest of: 1) the ACV of the damaged property at the time of the loss less the applicable deductible; 2) the amount necessary to replace the damaged property less the applicable deductible; 3) the amount necessary to repair the damaged property to its pre-loss condition less the applicable deductible; or 4) the stated amount shown on the declarations page for that covered auto.  Id.  This section states the ACV "is determined by the market value, age, and condition of the vehicle at the time the loss occurs."  Id.

III. Discussion

A. Whether to Pay the ACV

Progressive argues the Policy only obligates it to pay for a "sudden, direct and accidental loss."  Def. Mot. at 5.  Plaintiffs believe the Policy requires Progressive to pay the ACV in the event of a total loss.  Pl. Mot. at 5.  The plain language of the Policy justifies Plaintiffs' position.

Progressive declares a vehicle a total loss "when the cost of repair exceeds the value of the vehicle."  Id. ¶ 11, Ex. C, Silock Dep. 14:22-25.  When a total loss occurs, Progressive pays the ACV reduced by the deductible unless the insured has a "stated value" policy or retains the salvaged vehicle.  Joint Stip. ¶ 13; Silock Dep. 37:2-4.  Despite stipulating to these facts, Progressive argues it only promised to pay for the "loss," the cost of damages, and not the liability limit of the ACV.  See Def. Mot. at 2 (citing to Sylvester, 2020 WL 4934361).  In Sylvester, the insurance policy provided the insurer will pay for the "loss" of the vehicle and

3

limited the liability to the vehicle's ACV. Id. at *1. The court in Sylvester found "the policies unambiguously provide that the insurers must pay for loss to the vehicle, not the replacement cost." Id. at *4. However, the court acknowledged that the insurer must pay the liability limit, which was the ACV, when the insured's damages exceed that limit. Id. at *7 (citing Gambale v. Allstate Ins. Co., 228 A.2d 58 (Pa. Super. Ct. 1967)). In Sylvester, the plaintiff did not demonstrate its loss exceeded the limit of liability.[4] Here, all parties agree that the losses were greater than the limit of liability, which was the ACV. Joint Stip. ¶¶ 21, 29. Therefore, considering Sylvester's own language about when an insurer must pay its liability limit, Davis and Gress are entitled to the ACV.

    B. Value of the ACV

Plaintiffs contend that Progressive did not clearly define ACV in their Policy, and as a result, it should include the mandatory title and registration fees necessary to operate an automobile in Pennsylvania. Pl. Mot. at 9-11. Progressive challenges that the Policy specifies the method of calculating the ACV as "determined by the market value, age, and condition of the vehicle at the time the loss occurs," and does not include consideration of mandatory replacement fees such as title and registration fees. Def. Mot. at 6. I agree.

At issue is whether the Policy's language regarding the ACV is clear or ambiguous. If it is clear, then the Policy's language controls. If it is ambiguous, then Plaintiffs' interpretation controls. I find it is clear.

---

[4]     Notably, plaintiffs in Sylvester acknowledged they failed to properly allege that their loss amount exceeded the ACV, which would have entitled them to the ACV under the Policy. See Mot. to Amend (doc. 40) at 2, Sylvester v. Depositors Ins. Co., No. 20-1322 (E.D. Pa. Sep. 8, 2020).

The plain and unambiguous language of the relevant portions of the Policy establishes that when Progressive pays for loss of a covered auto, the limit of that payment is the lower of 1) the ACV, which is determined by the vehicle's market value, age, and condition, of the damaged vehicle, or 2) the cost of replacing the damaged vehicle.

Plaintiffs argue that they are owed mandatory fees as replacement costs pursuant to state law because the ACV was not in the "defined terms section," and because "determined by" does not translate to "mean." Pl. Mot. at 9-10. I disagree. The ACV could not mean "replacement cost" because that would create a redundancy in the Policy.

Plaintiffs argue that the ACV is ambiguous and therefore subject to the caselaw definition of "replacement cost" because the Policy did not define ACV in its "defined terms" section. Pl. Mot. at 9; see also Sylvester, 2020 WL 4934361, at *5 (when a policy promises ACV to the insured, "the insured is entitled to replacement cost,[']" unless the policy provides clear and unambiguous language otherwise) (quoting Kane v. State Farm Fire and Cas. Co., 841 A.2d 1038, 1046 (Pa. Super. Ct. 2003). Plaintiffs rely on Lomma v. Ohio Nat'l Life Assur. Corp., 329 F. Supp. 3d 78 (M.D. Pa. 2018) to argue that a word is ambiguous unless defined in a contract's "defined terms" section.

Plaintiffs misrepresent Lomma. In Lomma, the court found the term "contract years" ambiguous even though it was included in the policy's defined terms section because "the definition itself [was] not entirely clear." Id. at 90. The Third Circuit reversed and remanded Lomma, warning courts not to "distort the meaning of the [policy] language or resort to a strained contrivance in order to find an ambiguity." Lomma v. Ohio Nat'l Life Assur. Corp, 788 Fed. App'x. 104, 107 (3d Cir. 2019) (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). Davis and Gress seek a "strained contrivance" by suggesting that

"determined by" does not define the ACV in the Policy.  See also Pieczonka v. Progressive Select Insurance Co., 2021 WL 192735, at *1 (6th Cir. 2021) ("under a plain reading of policy language […] 'actual cash value' is determined by three factors at the time of the loss: market value, age, and condition").[5]  As the court held in Pieczonka, the Policy unambiguously defines the ACV in stating how it is determined.[6]

Further, no insurance policy provision should be treated as redundant "if any reasonable meaning consistent with the other parts can be given to it."  Mutual Ben. Ins. Co. v. Politopoulos, 75 A.3d 528 (Pa. Super. Ct. 2013).  The Policy states that, when paying a liability limit, Progressive will pay the lower of 1) the ACV and 2) "the amount necessary to replace" the damaged property reduced by the deductible.  Policy, Section IV.  The latter amount is the cost of replacement that "might cover costs of title and registration."  Pieczonka v. Progressive Select Ins. Co., No. 19-2965, 2020 WL 1930134, at *2 (N.D. Oh. Apr. 21, 2020).  If I granted Plaintiffs' interpretation of the Policy, I would be imputing those fees into the ACV and "negat[ing] any difference between the two," making the second option redundant.  Id.  Because I must avoid redundant meanings in contract language, I cannot impose the full breadth of replacement costs into the ACV.

An appropriate Order accompanies this Opinion.

---

[5] The Pieczonka court also declined to follow the same cases relied on by Davis and Gress. See 2021 WL 192735, at *2 (discounting Sos v. State Farm Mut. Auto. Ins. Co., 396 F. Supp. 3d 1074 (M.D. Fla. 2019) and Glover v. Liberty Mut. Ins. Co., 418 F. Supp. 3d 1161 (S.D. Fla. 2019) because those policies were undefined or specifically defined to include replacement costs).

[6] I also note Defendants' reliance on Haywood v. Progressive Paloverde Ins. Co., No. 49D01-1812-PL04189 (Ind. Comm. Ct., Marion Cty. Feb. 8, 2021).  2/11/2021 Def. Notice (doc. 43), Ex. A, Haywood v. Progressive Paloverde Ins. Co.  The Haywood court awarded summary judgment to Progressive, finding the same policy language to be clear and unambiguous.  Id. at 12.